UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AYBUKE BORA,<br>Petitioner,<br>v.<br>OTAY MESA DETENTION CENTER WARDEN and U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,<br>Respondents. | Case No.: 26-cv-3115-JES-DEB<br>**ORDER DENYING WITHOUT PREJUDICE PETITION FOR WRIT OF HABEAS CORPUS**<br>**[ECF No. 1]** |

Before the Court is Petitioner Aybuke Bora's ("Petitioner") Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. ECF No. 1. Pursuant to the Court's Order to Show Cause (ECF No. 4), Respondents filed a return and Petitioner filed a traverse. ECF Nos. 10, 12. Subsequently, Federal Defenders entered an appearance on behalf of Petitioner and filed a supplemental brief. ECF Nos. 13, 14. After due consideration and for the reasons set forth below, the Court **DENIES WITHOUT PREJUDICE** the petition.

## I. BACKGROUND

This is Petitioner's second petition for writ of habeas corpus. *See Bora v. Otay Mesa Detention Center Warden*, Case No. 25-cv-03392-JES-DEB ("*Bora I*"). In the first petition, Petitioner presented the following background facts. Petitioner is a citizen of Turkiye who arrived at the United States on or about October 21, 2025, around Tecate, California. She

was found to be inadmissible, detained, and placed into expedited removal pursuant to Immigration and Nationality Act ("INA") Section 235(b)(1). She claimed asylum, and a Credible Fear interview was conducted on October 28, 2025. After the interview, the asylum officer issued a negative credible fear determination. On November 10, 2025, an Immigration Judge ("IJ") reviewed the negative credible fear determination, and affirmed the determination. The Court denied the first writ, finding that it could not grant the relief that Petitioner sought in that first petition, which was essentially a review of her immigration case. *Bora I*, ECF No. 7.

In the instant habeas petition, Petitioner now challenges her prolonged detention. ECF No. 1. To date, she remains detained at the Otay Mesa Detention Center ("OMDC"). Petitioner argues that she has not received a bond hearing and that she poses no danger or flight risk. *Id.* at 6.

Respondents state that during Petitioner's time in detention, they have attempted to remove her. First, ERO secured a commercial removal flight for Petitioner on December 19, 2025, back to Turkiye with officer escort. ECF No. 10-1 ¶ 4. Petitioner was taken to the airport, but she refused to comply with the removal and was returned to OMDC. *Id.* ¶ 5. Subsequently, on March 17, 2026, Respondents state that ICE's Enforcement and Removal Operations ("ERO") reached out to the Detention and Deportation Headquarters to seek possible nomination of removal for Petitioner via a charter flight, but was advised to continue with commercial removal. *Id.* ¶ 6. On March 24, 2026, Respondents state that Petitioner advised ERO that she would not go back to Turkiye. *Id.* ¶ 7.

## II. LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2"The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and .).. . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the

Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, challenges to immigration-related detention are within the purview of a district court's habeas jurisdiction. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

## III. DISCUSSION

The core of Petitioner's writ is that she has been subject now to prolonged detention. Thus, the starting point of the analysis is to consider what provision now governs Petitioner's detention.

After an immigration court enters a final order of removal, the case is no longer pending and 8 U.S.C. § 1231 sets forth the detention framework. The government "shall remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A)-(a)(2)(A). The government holds the alien in custody during the initial 90-day removal period by statute. *Id.* This 90-day period may be extended in certain circumstances: "The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." *Id.* § 1231(a)(1)(C). After this removal period ends, for certain categories of detainees, the statute further provides that "an alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)." *Id.* § 1231(a)(6).

Under the § 1231(a)(1) framework, it is not disputed that Petitioner's order of removal became final on November 10, 2025, triggering the start of the 90-day detention

period. Based on this date, the standard 90-day removal period would end on February 8, 2026. However, this period may be extended if Petitioner's subsequent actions qualify under § 1231(a)(1)(C).

In *Diouf v. Mukasey*, the Ninth Circuit considered when a petitioner's action may extend the removal period and by how much. 542 F.3d 1222 (9th Cir. 2008). In *Diouf*, during the period of the petitioner's standard 90-day window, he refused to cooperate by refusing to leave the United States for a period of several months. *Id.* at 1230. The court held that such conduct qualified under § 1231(a)(1)(C) and would extend the window. *Id.* The court then considered the question of how long the window would be extended for and held that "the 90–day clock could restart following the latest date of documented obstruction." *Id.* at 1231. After calculating the new period, with the petitioner still being detained, the court found that "the statutory basis for his subsequent detention was § 1231(a)(6)." *Id.* at 1232 (holding that § 1231(a)(6) governed detention that "occurred 'beyond' the removal period").

With this background in mind, the Court turns to the facts of this case. On December 18, 2025, during the statutory 90-day window, it is also not disputed that Petitioner was scheduled for removal to Turkiye on a commercial flight, and she did not get on the flight. Petitioner argues that her behavior was not "obstruction" but that she only expressed that she was fearful of returning to Turkiye and her reaction was "emotional, fear-based, and nonviolent." ECF No. 12 at 6. Regardless of her motivation underlying the refusal to get on the flight however, the Court finds that under *Diouf*, this event qualifies as a refusal to cooperate under § 1231(a)(1)(C) and has the effect to reset the 90-day window from that date. Thus, the 90-day extension would now end on March 18, 2026.

On March 17, 2026, Respondents state that ICE's Enforcement and Removal Operations ("ERO") reached out to the Detention and Deportation Headquarters to seek possible nomination of removal for Petitioner via a charter flight, but was advised to continue with commercial removal. ECF No. 10-1 ¶ 6. The Court does not find that this event qualifies as an obstruction of the removal process by Petitioner under §

1231(a)(1)(C). Neither Respondents nor Petitioner alleges that any other actions took place before March 18, 2026, the end of the new 90-day window. Thus, the statutory 90-day removal period expired on March 18, 2026.

Next, the Court considers what statutory provision now governs Petitioner's detention. In the Notice and Order of Expedited Removal, Petitioner was charged with being inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I). ECF No. 10-2 at 9. Thus, she qualifies within one of the categories of aliens covered by 8 U.S.C. § 1231(a)(6) and her detention, like in *Diouf*, is now covered by this statutory provision.[1]

During detention under § 1231(a)(6), under *Zadvydas*, the Supreme Court held that when the government is unable to remove an alien within the statutory period, the alien may seek review of the reasonableness of their continued detention under the due process clause through petition for writ of habeas corpus. 533 U.S. at 687. The Court instructed courts to analyze whether continued detention beyond the statutory period "exceeds a period reasonably necessary to secure removal," based on "the [removal detention] statute's basic purpose, namely, assuring the alien's presence at the moment of removal." *Id.* at 699. The Court has held that it is presumptively reasonable for the government to detain an alien for a period of 6 months while it works to effectuate his removal after issuing a final order of removal against him. *Id.* at 701. Beyond that period, "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute" and grant the petition for writ of habeas corpus. *Id.* at 699-700. Under *Zadvydas*, the burden is on the petitioner to first provide a "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. If the petitioner makes this showing, then the burden shifts to the government to "respond with evidence sufficient to rebut that showing." *Id.*

---

[1] Petitioner's supplemental brief seems to suggest that unless there is "positive evidence" of noncompliance in the last 90-days, then release must be ordered. ECF No. 14 at 2-3. However, this is undercut by *Diouf*, where continued detention after the expiration of the 90-day period without further non-compliance was governed by § 1231(a)(6).

Based on the briefing before it, the Court finds that Petitioner has not met her burden under *Zadvydas* at this time. Respondents state that subsequently, on March 24, 2026, Petitioner "advised ERO that she would not go back to the republic of Turkiye." ECF No. 10-1 ¶ 7. In her traverse, Petitioner qualifies that statement that she made as a "continuation of the same fear [she] expressed during the credible fear process and against during the December 18 removal attempt" and "not a new strategy to manufacture delay." ECF No. 12 at 7. The Court agrees with Petitioner that Respondents may not indefinitely detain her based on prior statements of refusal to be removed. However, the question under *Zadvydas* remains whether petitioner can show "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Given her prior statement and the timing of relevant dates in Petitioner's case, the Court finds that she has not sufficiently established a *Zadvydas* claim at this time.

Thus, the Court **DENIES** the writ for petition of habeas corpus. This denial is **WITHOUT PREJUDICE** to Petitioner refiling a new writ should the circumstances enable her to articulate a basis for a finding of no significant likelihood of removal in the foreseeable future.[2]

## IV. CONCLUSION

For the reasons discussed above, the Court **DENIES** the Petition **WITHOUT PREJUDICE**. The Clerk is directed to close the case.

**IT IS SO ORDERED.**

Dated: July 21, 2026

Honorable James E. Simmons Jr.
United States District Judge

[2] Respondents urge that any denial of the writ be with prejudice, but the Court does not find that appropriate in the context of a *Zadvydas* claim, where circumstances may change in the future and present a different, cognizable claim.